AUSA Faaqe Hussein, (312) 353-4156

# UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

UNITED STATES OF AMERICA

v.

BENJAMIN CANTIN

(Name and Address of Defendant)

FILED
KC 2-26-08
FEB 2 6 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

CRIMINAL COMPLAINT

CASE NUMBER: 08CR 0156

08CR156

I, Special Agent James Stover, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief.

On or about February 25, 2008, at Chicago, in the Northern District of Illinois, Eastern Division,

defendant: BENJAMIN CANTIN

did, by force and violence, and by intimidation, take from the person and presence of another, approximately $4,700 in United States Currency belonging to, and in the care, custody, control, management, and possession of a bank, namely, the Fifth Third Bank at 100 S. Halsted Street, Chicago, Illinois, whose deposits were insured by the Federal Deposit Insurance Corporation, in violation of Title 18 United States Code, Section 2113(a).

I further state that I am a Special Agent with the Federal Bureau of Investigation and that this complaint is based on the following facts:

PLEASE SEE ATTACHED.

Continued on the attached sheet and made a part hereof: X Yes ___ No

SA [signature]
James Stover, Special Agent
Federal Bureau of Investigation

Sworn to before me and subscribed in my presence,

February 26, 2008     at     Chicago, Illinois
Date                                                       City and State

Jeffrey Cole, U.S. Magistrate Judge                          [signature]
Name & Title of Judicial Officer                                 Signature of Judicial Officer

STATE OF ILLINOIS            )
                             )  SS
COUNTY OF COOK               )

I, James M. Stover, being duly sworn under oath, state as follows:

1.    I am a Special Agent of the Federal Bureau of Investigation ("FBI") and have been so employed since 1995. I am assigned to the investigation of various crimes, including bank robberies and kidnappings.

### Basis of Knowledge and Purpose of Affidavit

2.    I make this affidavit from personal knowledge based on my participation in this investigation and communications with others who have personal knowledge of the events and circumstances described herein. The information outlined below is provided for the limited purpose of establishing probable cause and does not contain all details or all facts of which I am aware relating to this investigation. Because the limited purpose of this affidavit is to establish probable cause for the issuance of a criminal complaint against Benjamin Cantin, I have not included all facts known to me regarding the circumstances of Cantin's arrest.

### February 25, 2008, Bank Robbery

3.    On February 25, 2008, the Fifth Third Bank located at 100 South Halsted, Chicago, Illinois (the "Bank") was robbed by a white male approximately 30 years of age, 6'1" and 270 pounds, identified immediately after the robbery as Benjamin Cantin. According to Teller A, at approximately 10:00 a.m., Cantin entered the Bank and approached her teller station. Upon arriving at Teller A's station, Cantin requested information about opening a checking account. Teller A advised Cantin that he needed to produce a form of identification and $50.00 dollars. According to Teller A, Cantin then told Teller A that he had an identification card from Minneapolis and that he was staying at a local hotel. Cantin did not say anything else to Teller A. Teller A then observed

Cantin exit the bank. According to Teller A, shortly after Cantin exited the Bank, another customer in the Bank approached Teller A and informed Teller A that she saw Cantin moments before at a nearby Starbucks and that Cantin was "talking crazy."

4. According to Teller A, at approximately 2:15 p.m., on February 25, 2008, Cantin returned to the Bank and again approached Teller A's station. Cantin asked Teller A about opening a business account. Teller A provided Cantin with some preliminary information and directed him to take a seat in the Bank's waiting area. Rather than take a seat, Cantin handed Teller A a demand note that appeared to be written on a dirty receipt. Teller A read the demand note, which read something to the effect of: "$4000 I'm not playing." Teller A then opened her drawer to show Cantin that she did not have any money in her drawer and told him that she would get the money from the cash dispenser. Cantin then said he was serious and then put his hand near his waist and told Teller A that he had a gun. Teller A complied with Cantin's demand by providing Cantin with money from a cash dispensing machine. An audit later conducted by Bank personnel revealed a robbery loss of approximately $4,700.00 in United States currency ("USC"). After Cantin receiving the money, Teller A saw Cantin exit the Bank.

5. According to Bank Employee 1 and 2, during the time that Cantin was standing at Teller A's station and demanding money, they were both working near Teller A and observed Cantin speak to Teller A. Specifically, Bank Employee 1 heard Cantin tell Teller A that he "was not joking" and that he had a ".38 snub nose." As a result, Bank Employee 1 activated the Bank's silent alarm. Bank Employee 2 heard Cantin mention the phrase ".38."

### Identification of Benjamin Cantin as the Bank Robber

6. According to Bank Employees 1 and 2, as Cantin exited the Bank, they both exited the Bank in an effort to follow Cantin. Bank Employee 1 observed Cantin head toward the Starbucks

coffee shop located at 116 South Halsted Street. While following Cantin, Bank Employee 1 located a Chicago Police Officer, informed the officer of the robbery, and provided a physical description of Cantin. The officer and other officers entered the Starbucks, and apprehended Cantin. Bank Employees 1 and 2 then identified Cantin as the individual who had robbed the Bank moments earlier.

6. The Chicago Police officers searched Cantin and recovered $4,700.00 in one-hundred dollar bills from Cantin's pocket, along with four separate notes. One note was written on the back of a taxi receipt and read as follows: "THE CASH OR I START SHOOTING." The second note read as follows: "GIVE ME THE CASH OR I START SHOOTING." The third note read: "4,000 DOLLARS NO DYE PACKS OR I COME BACK SHOOTING." The fourth note read, "4,000 $ OR I START SHOOTING."

7. Following his arrest, Cantin was transported to the Chicago Police Department's 12th District where he was interviewed by FBI agents. Prior to the interview, Cantin was advised of his Miranda rights and he subsequently waived those rights. Cantin then identified himself as Benjamin Cantin, confessed to the aforementioned robbery and provided specific details about the robbery, including that he entered the Bank earlier in the day, returned to the Bank later in the afternoon, handed the demand note to Teller A, left with the money and entered the Starbucks. Cantin also told FBI agents that was from Minnesota, and that he was staying at a local motel.

8. According to information provided by the Bank, on February 25, 2008, the Fifth Third Bank was and is an institution whose funds are insured by the Federal Deposit Insurance Corporation.

3

## Conclusion

9. Based on the foregoing, I respectfully submit there exists probable cause to believe that Benjamin Cantin, by force and violence and intimidation, did take from a teller money belonging to and in the care, custody, control, management and possession of the Fifth Third Bank in Chicago Illinois, a federally insured institution, in violation of Title 18 U.S.C. Section 2113(a).

Further affiant sayeth not,

_____
James M. Stover
Special Agent
Federal Bureau of Investigation

Subscribed to and sworn before
me this 26th day of February, 2008

_____
U.S. Magistrate Judge Jeffrey Cole