FILED

APR 0 9 2008 R.D.

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA    )
                            )    No. 08 CR 156
vs.                         )    Judge Ruben Castillo
                            )
BENJAMIN G. CANTIN          )

## PLEA AGREEMENT

1.    This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant BENJAMIN G. CANTIN, and his attorney, MARY H. JUDGE, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

### Charge in This Case

2.    The information in this case charges defendant with one count of bank robbery, in violation of title 18 United States Code, Section 2113(a).

3.    Defendant has read the charge against him contained in the information, and that charge has been fully explained to him by his attorney.

4.    Defendant fully understands the nature and elements of the crime with which he has been charged.

### Charge to Which Defendant is Pleading Guilty

5.    By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the information. The information charges that on or about February 25, 2008, defendant

robbed the Fifth Third Bank located at 100 S. Halsted Street in Chicago, in violation of Title 18, United States Code, Section 2113(a).

## Factual Basis

6.     Defendant will plead guilty because he is in fact guilty of the charge contained in the information. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

On or about February 25, 2008, at Chicago, in the Northern District of Illinois, Eastern Division, defendant BENJAMIN CANTIN, by force and violence, and by intimidation, did take from the person and presence of a bank employee approximately $4,700 in United States currency belonging to, and in the care, custody, control, management, and possession of the Fifth Third Bank located at 100 S. Halsted Street, Chicago, Illinois, the deposits of which were then insured by the Federal Deposit Insurance Corporation ("FDIC"), in violation of Title 18, United States Code, Section 2113(a).

Specifically, CANTIN admits that on February 25, 2008, at approximately 10:00 a.m., he entered the Fifth Third Bank at 100 South Halsted Street, Chicago, Illinois (the "Bank"). Defendant admits that he approached Teller A's teller station and inquired about opening a checking account. Defendant further admits that Teller A told him that he needed a form of identification and $50. Defendant responded that he had an identification card issued by the State of Minnesota and that it was at the hotel room in which he was staying. CANTIN admits that he then left the Bank.

2

Defendant further admits that approximately four hours and fifteen minutes later, at about 2:15 p.m., he returned to the Bank and again approached Teller A's station. Defendant admits that he asked Teller A about opening a business account. Teller A responded by handing CANTIN several pamphlets and directing him to the waiting area to read the pamphlets. Defendant admits that rather than proceed to the waiting area, he handed Teller A a demand note, which contained words to the effect, $4000 I'm not playing." Defendant admits that Teller A first opened her drawer to show CANTIN that she did not have any money but then told him that she would get money from the cash dispenser. Defendant admits that he responded by stating that he was serious, placing his hand near his waist, and telling Teller A that he had a ".38," which was a reference to a handgun. At that point, Teller A walked to the cash dispenser and returned to her station where she handed CANTIN $4,700. Defendant admits that he took the money and the demand note and exited the Bank. Defendant admits that at the time he was apprehended, he had four demand notes and $4,700 in United States currency in his pockets. Defendant admits that on February 25, 2008, the Fifth Third Bank at 100 South Halsted Street in Chicago, Illinois was insured by the FDIC.

## Maximum Statutory Penalties

7.    Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

3

a.    A maximum sentence of 20 years' imprisonment. This offense also carries a maximum fine of $250,000. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

b.    In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty imposed.

### Sentencing Guidelines Calculations

8.    Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

9.    For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a.    **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2007 Guidelines Manual.

b.    **Offense Level Calculations.**

i.    The base offense level for the charge in the information is 20, pursuant to Guideline §2B3.1(a);

4

ii. The base offense level for the offense of conviction is increased 2 levels, pursuant to Guideline §2B3.1(b)(1), because the property of a financial institution was taken;

iii. The base offense level for the offense of conviction is increased 2 levels, pursuant to Guideline §2B3.1(b)(2)(F), because defendant made a threat of death.

iv. Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline §3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

v. In accord with Guideline §3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline §3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

     c.    **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government and stipulated below, defendant's criminal history points equal 14 and defendant's criminal history category is VI:

     i.    On or about February 2, 2007, defendant was convicted of second degree driving while impaired in the District Court for Anoka County, Minnesota and sentenced to 1 year in prison and 6 years probation. Pursuant to Guideline Section 4A1.1(b), defendant gets 2 criminal history points for this conviction.

     ii.    On or about November 22, 2004, defendant was convicted of third degree driving under the influence in the District Court for Scott County, Minnesota and sentenced to thirty days in jail. Pursuant to Guideline Section 4A1.1(c), defendant gets 1 criminal history point for this conviction.

     iii.    On or about June 26, 2003, defendant was convicted of interfering with a 911 call in the District Court for Dakota County, Minnesota and sentenced to two years probation. Pursuant to Guideline Section 4A1.1(c), defendant gets 1 criminal history point for this conviction.

     iv.    On or about September 18, 2001, defendant was convicted of making terroristic threats in the District Court for Dakota County, Minnesota and sentenced to eighteen months in prison. Pursuant to Guideline Section 4A1.1(a), defendant gets 3 criminal history points for this conviction.

6

v.      On or about December 29, 1999, defendant was convicted of careless driving in the District Court for Hennepin County, Minnesota and sentenced to thirty days in prison. Pursuant to Guideline Section 4A1.1(c), defendant gets 1 criminal history point for this conviction.

vi.     On or about October 7, 1997, defendant was convicted of third degree burglary in the District Court for Dakota County, Minnesota and sentenced to 32 months in prison. Pursuant to Guideline Section 4A1.1(a), defendant gets 3 criminal history point for this conviction.

vii.    Defendant committed the instant offense while on probation for the conviction in paragraph 9(c)(i) above and committed the instant offense less than two years after release on the sentence in paragraph 9(c)(i) above. Pursuant to Guideline Section 4A1.1(d) and (e), defendant receives three additional points.

d.      **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the anticipated offense level is **21**, which, when combined with the anticipated criminal history category of **VI**, results in an anticipated advisory Sentencing Guidelines range of **77 to 96** months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

e.      Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts

or applicable legal principles may lead the government to conclude that different or additional Guideline provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

f.      Both parties expressly acknowledge that this plea agreement is not governed by Fed.R.Crim.P. 11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

## Agreements Relating to Sentencing

10.     The government agrees to recommend that sentence be imposed within the applicable guidelines range and to make no further recommendation concerning at what point within the range sentence should be imposed.

8

11.     It is understood by the parties that the sentencing judge is neither a party to nor bound by this Plea Agreement and may impose a sentence up to the maximum penalties as set forth above.  Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

12.     Regarding restitution, the parties agree that, pursuant to Title 18, United States Code, Section 3663A, the Court must order restitution.  The parties further agree that Fifth Third Bank has been repaid, and no restitution is due.

13.     Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

## Presentence Investigation Report/Post-Sentence Supervision

14.     Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope and extent of defendant's conduct regarding the charge against him, and related matters.  The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing.

15.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of

9

his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline §3E1.1 and enhancement of his sentence for obstruction of justice under Guideline §3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

16.    For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

10

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Plea Agreement

17.    This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 08 CR 156.

18.    This Plea Agreement concerns criminal liability only.  Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver or release by the United States or any of its agencies of any administrative or judicial civil claim, demand or cause of action it may have against defendant or any other person or entity.  The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

19.    Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.    **Right to be charged by indictment.** Defendant understands that he has a right to have the charge prosecuted by an indictment returned by a concurrence of twelve or more members of a grand jury consisting of not less than sixteen and not more than twenty-three members.  By signing this Agreement, defendant knowingly waives his right to be prosecuted by indictment and to assert at trial or on appeal any defects or errors arising

11

from the information, the information process, or the fact that he has been prosecuted by way of information.

      **b.**    **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

      i.    The trial could be either a jury trial or a trial by the judge sitting without a jury. Defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

      ii.    If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

      iii.    If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

iv.    If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.    At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi.    At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.    At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

c.    **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the legality of the sentence imposed. Defendant further understands that any appeal must be filed within 10 calendar days of the entry of the judgment of conviction.

13

d.      Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above.     Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

## Other Terms

20.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

21.     Defendant understands that pursuant to Title 12, United States Code, Section 1829, his conviction in this case will prohibit him from directly or indirectly participating in the affairs of any financial institution insured by the Federal Deposit Insurance Corporation (FDIC) except with the prior written consent of the FDIC and, during the ten years following his conviction, the additional approval of this Court.  Defendant further understands that if he violates this prohibition, he may be punished by imprisonment for up to five years and a fine of up to $1,000,000.

## Conclusion

22.     Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record and may be disclosed to any person.

23.     Defendant understands that his compliance with each part of this Plea Agreement extends throughout the period of his sentence, and failure to abide by any term

14

of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

24.     Should the judge refuse to accept defendant's plea of guilty, this Plea Agreement shall become null and void and neither party will be bound thereto.

25.     Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement to cause defendant to plead guilty.

15

26.    Defendant acknowledges that he has read this Plea Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 4. 9. 2008

PATRICK J. FITZGERALD
United States Attorney

BENJAMIN G. CANTIN
Defendant

FARIS J. HUSSEIN
Assistant U.S. Attorney

MARY JUDGE
Attorney for Defendant

16